CASE NO. 12-1172

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

THE NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS,

*Petitioner*,

v.

FEDERAL TRADE COMMISSION,

*Respondent*.

_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE FEDERAL TRADE COMMISSION

_____

**PETITIONER'S REPLY BRIEF**

_____

Noel L. Allen
M. Jackson Nichols
Catherine E. Lee
Nathan E. Standley
Brenner A. Allen, of counsel
ALLEN, PINNIX & NICHOLS, P.A.
Post Office Drawer 1270
Raleigh, North Carolina 27602
Telephone:  919-755-0505
Facsimile:  919-829-8098
Email:  nallen@allen-pinnix.com
      mjn@allen-pinnix.com
      clee@allen-pinnix.com
      nstandley@allen-pinnix.com
      baa@allen-pinnix.com

*Counsel for Petitioner*

# TABLE OF CONTENTS

Table of Authorities ......................................................................... iii

Introduction ...................................................................................... 1

Argument ........................................................................................... 2

I.    FTC'S SELF-SERVING FALSE FINDINGS AND CONCLUSIONS
      DO NOT WARRANT COURT DEFERENCE ............................................. 2

II.   NCSBDE IS NOT A "PERSON" UNDER THE FTCA ............................... 4

      A.    Plain Meaning of "Persons" Under FTCA Does Not Include
            "States" or "State Agencies" ................................................... 4

      B.    "Persons" Under FTCA Does Not Include "States" or "State
            Agencies" Under Rules of Statutory Construction .............................. 5

III.  NCSBDE IS IMMUNE UNDER THE STATE ACTION DOCTRINE ........ 9

      A.    FTC Still Offers No Dispositive Cases Supporting Evisceration
            of State Action Immunity. ...................................................... 9

      B.    NCSBDE Establishes Clear Articulation and Active Supervision ..... 13

      C.    Antitrust Scrutiny of How a State Agency Seeks Compliance
            with a Clearly-Articulated Unauthorized Practice Statute
            Is Not Good Public Policy ...................................................... 15

IV.   NCSBDE IS NOT CAPABLE OF CONSPIRING WITH ITSELF ............. 19

V.    NCSBDE DID NOT CONSPIRE TO ILLEGALLY RESTRAIN
      TRADE ................................................................................... 24

VI.   STATE AGENCIES' PURSUIT OF VOLUNTARY COMPLIANCE
      WITH UNAUTHORIZED PRACTICE STATUTES IS NOT AN
      UNREASONABLE RESTRAINT OF TRADE ........................................ 28

Conclusion ...................................................................................... 29

i

Certificate of Compliance ........................................................................31

Certificate of Service ...............................................................................32

# TABLE OF AUTHORITIES

## Cases

*American Needle, Inc. v. NFL*,
   130 S. Ct. 2201 (2010).......................................................................20

*Andrews v. United States*,
   441 F.3d 220 (4th Cir. 2006) ...............................................................5

*Asheville Tobacco Board of Trade v. FTC*,
   263 F.2d 502 (4th Cir. 1959) ...................................................... 10, 11

*Ayes v. U.S. Department of Veterans Affairs*,
   473 F.3d 104 (4th Cir. 2006) ...............................................................4

*Bates v. State Bar of Arizona*,
   433 U.S. 350 (1977)..............................................................................9

*Brazil v. Arkansas Bd. of Dental Examiners*,
   593 F. Supp. 1354 (E.D. Ark. 1984)...................................................13

*California State Bd. of Optometry v. FTC*,
   910 F.2d 976 (D.C. Cir. 1990)....................................................6, 7, 8

*City of Columbia v. Omni Outdoor Advertising*,
   499 U.S. 365 (1991)................................................................15, 16, 17

*City of Columbus v. Ours Garage & Wrecker Service*,
   536 U.S. 424 (2002)..............................................................................7

*Cooper v. Forsyth County Hospital Authority, Inc.*,
   789 F.2d 278 (4th Cir. 1986) .............................................................26

*Earles v. State Bd. of Certified Public Accountants of Louisiana*,
   139 F.3d 1033 (5th Cir. 1998) ...........................................................13

*Flav-O-Rich, Inc. v. N.C. Milk Commission*,
   593 F. Supp. 13 (E.D.N.C. 1983) ......................................................12

*FTC v. Indiana Federation of Dentists*,
476 U.S. 447 (1986)..................................................................................2

*FTC v. Monahan,*
832 F.2d 688 (1st Cir. 1987)....................................................................10

*FTC v. Ticor Title Insurance Co.*,
504 U.S. 621 (1992)..................................................................................9

*Garcia v. San Antonio Metropolitan Transit Authority*,
469 U.S. 528 (1985)..................................................................................8

*Goldfarb v. Virginia State Bar*,
421 U.S. 773 (1975).......................................................................10, 11, 12

*Gonzales v. Oregon*,
546 U.S. 243 (2006)..................................................................................6

*Gregory v. Ashcroft*,
501 U.S. 452 (1991)..................................................................................6

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995)..................................................................................5

*Hass v. Oregon State Bar*,
883 F.2d 1453 (9th Cir. 1989) ........................................................9, 13, 15

*Hoover v. Ronwin*,
466 U.S. 558 (1984)................................................................................29

*Kentucky Household Goods Carrier Ass'n*,
139 F.T.C. 404 (2005) ............................................................................12

*Kurek v. Pleasure Driveway & Park District*,
557 F.2d 580 (7th Cir. 1977) ..................................................................11

*Llewellyn v. Crothers*,
765 F.2d 769 (9th Cir. 1985) ..................................................................17

*Microsoft Corp. v. Computer Support Service of Carolina, Inc.*,
    123 F. Supp. 2d 945 (W.D.N.C. 2000) ...............................................28

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)..........................................................................25

*National Federation of Independent Business v. Sebelius*,
    183 L. Ed. 2d 450 (2012) ................................................................13

*New England Motor Rate Bureau, Inc. v. FTC*,
    908 F.2d 1064 (1st Cir. 1990).............................................................3

*Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.*,
    311 F. Supp. 1048 (D. Colo. 2004)....................................................28

*Norman's on the Waterfront, Inc. v. Wheatley*,
    444 F.2d 1011 (3d Cir. 1971) ...........................................................10

*North Texas Specialty Physicians v. FTC*,
    528 F.3d 346 (5th Cir. 2008) .....................................................22, 23

*Parker v. Brown*,
    317 U.S. 341 (1943)................................................................7, 8, 14

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*,
    878 F.2d 801 (4th Cir. 1989) ...........................................................25

*Patrick v. Burget*,
    486 U.S. 94 (1988)............................................................................9

*Rayex Corp. v. FTC*,
    317 F.2d 29 (2d Cir. 1963)................................................................3

*Robertson v. Consolidated Multiple Listings Service, Inc.*,
    679 F.3d 278 (4th Cir. 2012) ...........................................................24

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
    792 F.2d 210 (D.C. Cir. 1986)..........................................................23

*State ex rel. Commissioner of Insurance v. N.C. Rate Bureau,*
300 N.C. 381 (1980) ........................................................................17

*Town of Hallie v. City of Eau Claire,*
471 U.S. 34 (1985) ....................................................................14, 17

*United States v. Bass,*
404 U.S. 336 (1971) ........................................................................6

*United States v. Dauray,*
215 F.3d 257 (2d Cir. 2000) .............................................................8

*United States v. Sealy, Inc.,*
388 U.S. 350 (1967)........................................................................22

*United States v. Visa U.S.A., Inc.,*
163 F. Supp. 2d 322 (S.D.N.Y. 2001) .............................................23

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
529 U.S. 765 (2000)......................................................................4, 8

*Washington Gas Light Co. v. Virginia. Elec. & Power Co.,*
438 F.2d 248 (4th Cir. 1971) ...........................................................14

*White Smile USA, Inc. v. Bd. of Dental Examiners of Alabama,*
36 So. 3d 9 (Ala. 2009)...................................................................21

*Will v. Michigan Department of State Police,*
491 U.S. 58 (1989)...................................................................4, 6, 7

*Withrow v. Larkin,*
421 U.S. 35 (1975)..........................................................................24

**Statutes**

15 U.S.C. § 3(a) ................................................................................16

15 U.S.C. § 1311(f)............................................................................4

N.C.G.S. § 84-37(a) ........................................................................29

N.C.G.S. § 90-22(a) ................................................................17

N.C.G.S. § 90-29(b) ...............................................................20

N.C.G.S. § 120-76(1) ..............................................................14

N.C.G.S. § 138A-10 .................................................................14

N.C.G.S. § 138A-12(o) .......................................................14, 23

N.C.G.S. § 138A-15(d) ............................................................23

N.C.G.S. § 138A-39(a) ............................................................23

N.C.G.S. § 150B-19 .................................................................15

**Rules**

27 N.C.A.C. 1A.0304 ..............................................................29

**Other Authority**

Kan. Op. Att'y Gen. No. 2008-13,
    2008 Kan. AG LEXIS 13 (June 3, 2008)..............................21

Okla. Op. Att'y Gen. No. 03-13,
    2003 Okla. AG LEXIS 13 (Mar. 26, 2003) .........................21

1 P. Areeda & D. Turner, Antitrust Law (Supp. 1982) ......................14

P. Areeda & H. Hovenkamp, Antitrust Law (3d ed. 2006) ......................5, 18, 19

Elhauge, *The Scope of Antitrust Process*, 104 Harv. L. Rev. 667 (1991)..............12

Garland, *Antitrust and State Action: Economic Efficiency and the
    Political Process*, 96 Yale L.J. 486 (1987) .......................................18

Rossi, *Realizing the Promise of Electricity Deregulation*,
    40 WAKE FOREST L. REV. 617 (2005)................................................................15

L. Tribe, AMERICAN CONSTITUTIONAL LAW (2d ed. 1988) .......................................8

# INTRODUCTION

Federal Trade Commission ("FTC" or "Commission"), in its Response Brief ("Response") urges acceptance of a dangerous construct that substantively rewrites each essential element of antitrust jurisprudence in this context and upends constitutional federal-state balance.  FTC urges:

- deference to patently false findings;

- antitrust scrutiny of state agency administration of clearly-articulated statutes;

- relevant market definition that includes illegal services;

- presumptive conspiracy when state boards comprised of state officials (required by law to be licensees) enforce clearly-articulated unauthorized practice statutes;

- enlarged FTC jurisdiction and evisceration of state action immunity without Congressional authority and admittedly without Supreme Court ("SCOTUS") precedence;

- presumption that licensed state officials would violate state ethics laws to engage in self-aggrandizing restraints of trade because they could be potential competitors with illegal service providers; and

- unreasonable restraint in the absence of proof that the N.C. State Board of Dental Examiners ("NCSBDE" or "Board")'s actions deprived the marketplace of any lawful choice.

As shown herein, FTC still has not supported its radical positions with any relevant cases or substantial evidence. FTC's Response never disputes that NCSBDE acted pursuant to the North Carolina Dental Practice Act ("NCDPA") and only upon finding *prima facie* evidence of a state law violations. Lacking any evidence of collusion, conceding a clearly-articulated statute, and deeming public protection irrelevant, FTC abandons the theory of its original complaint and urges antitrust scrutiny of the ministerial ways NCSBDE enforced clear statutes. It is not within the intended scope of federal antitrust nor FTC's prerogative to micromanage the manner in which a state agency attempts to obtain voluntary compliance with illegal operators who are *prima facie* violators of clear state law or to second-guess how a state legislature structures a state agency.

## ARGUMENT

## I.    FTC'S SELF-SERVING FALSE FINDINGS AND CONCLUSIONS DO NOT WARRANT COURT DEFERENCE.

It is the reviewing court's prerogative, not FTC's, to resolve "identification of governing legal standards and their application to the facts found." *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986). In particular, no deference is warranted to FTC's legal conclusions about its efforts to eviscerate state action

2

immunity.  *See, e.g., New England Motor Rate Bureau, Inc. v. FTC*, 908 F.2d 1064, 1072 (1st Cir. 1990).

Lacking substantial evidence, FTC's Response urges unconscious deference to self-serving and unfounded inferences (mislabeled as "findings of fact").  As shown in the Opening Brief ("Opening") and herein, FTC premises pivotal findings upon record citations that either do not support or actually contradict FTC's argumentative inferences.  For example, a finding that dentists complained about competitors' prices, not consumer harm, cites evidence that few referenced price, but many expressed safety concerns and statutory violations.  The Response's purported "facts," like the findings in Commission's Opinion and Administrative Law Judge ("ALJ")'s Decision, are largely verbatim recitations of Complaint Counsel ("CC")'s argumentative proposed findings.  One noteworthy exception:  during oral argument CC asked the Commission to make additional findings about public protection (which the ALJ had not made) simply for the purpose of deference.  Oral Argument Tr., 43:15-44:11.  Because FTC "is, at once, the accuser, the prosecutor, the judge and the jury, ... the Commission should assume a wider responsibility than that necessarily undertaken by a private litigant... ." *Rayex Corp. v. FTC*, 317 F.2d 290, 294-95 (2d Cir. 1963).  Deference to FTC's findings should not be an abdication of the substantial evidence requirement or a by-product of self-serving gamesmanship.

3

## II.    NCSBDE IS NOT A "PERSON" UNDER THE FTCA.

### A.    Plain Meaning of "Persons" Under FTCA Does Not Include "States" or "State Agencies."

In arguing that the Federal Trade Commission Act ("FTCA") includes states as "persons," FTC violates the "cardinal canon" of statutory construction:  the "plain meaning rule."  *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006).  The plain meaning of "persons" does not include states and their statutory agencies.  Indeed, courts have consistently held that "person" should not be construed to include sovereign states.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (usage of statutory term "person" does not include the state).  This presumption "may be disregarded only upon some affirmative showing of statutory intent to the contrary."  *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 781 (2000).  Although FCTA should be read in context, neither FTCA's provisions nor its legislative history indicates states are within its jurisdiction.

FTC cites 15 U.S.C. §1311(f) to argue that, since Congress used "natural person" in other antitrust statutes, "person" in FTCA includes states.  FTC misstates the definition of "person" under 15 U.S.C. §1311(f), which actually provides that "person" means "any natural person, partnership, corporation, association, or other legal entity, **including any person acting under color or authority of State law**."  (emphasis added).  FTC places a period after the word

4

"entity" because the complete definition reveals that Congress explicitly references state officials when it intends to include them. Response, 25. If Congress intended to grant FTC authority over states and state agencies, it would have expressed such intent.[1] *See* P. Areeda & H. Hovenkamp, Antitrust Law ¶228 at 217 (3d ed. 2006) ("In other cases, such as those involving civil rights damages actions against government officials acting 'under the color of state law,' Congress was absolutely clear that its intent was to control the behavior of government officials.").

### B. "Persons" Under FTCA Does Not Include "States" or "State Agencies" Under Rules of Statutory Construction.

Even if the term "person" were ambiguous, three rules of statutory construction make clear that states and their agencies are not "persons" under FTCA. First, under *noscitur a sociis*, courts avoid ascribing "to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995); *Andrews v. United States*, 441 F.3d 220, 224 (4th Cir. 2006) (internal citation omitted), *overruled on other grounds by Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008). In FTCA, "person" is immediately followed by the

---

[1] Amicus American Antitrust Institute ("AAI") contends that "where ... a board serves as an agent of natural persons (competitors) who are obviously subject to FTC's jurisdiction, it would exalt form over substance to exempt the board itself from the strictures of the statute." AAI Brief, 3 n.2. But, the logical extension of that reasoning would extend FTC jurisdiction under FTCA over any entity simply because it is comprised of "natural persons." Importantly, NCSBDE is not a legal "entity" unto itself, but is part and parcel of the state.

terms "partnership" and "corporation," indicating Congress's intent to limit FTC jurisdiction to these three specific categories—none of which include states and their statutory agencies.  *See also Cal. State Bd. of Optometry v. FTC*, 910 F.2d 976, 980 (D.C. Cir. 1990) (emphasis in original) ("The legislative history of the Act suggests that at the time of its original enactment, Congress was concerned with the anticompetitive conduct of *businesses*, whether organized as corporations, partnerships, associations, or sole proprietorships.").

Second, the clear statement rule requires courts not to interpret ambiguous statutes in a way that would "alter the usual constitutional balance between the States and the Federal Government," unless Congress's intent to do so is "unmistakably clear in the language of the statute."  *Will*, 491 U.S. at 65; *United States v. Bass*, 404 U.S. 336, 349 (1971); *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991).  FTC's assertion of jurisdiction over NCSBDE alters the usual balance of federalism.  *See Gonzales v. Oregon*, 546 U.S. 243, 271, 274 (2006) (internal citation omitted) (health and safety regulation is primarily and historically a matter of local concern; federalism principles "belie the notion that Congress would use such an obscure grant of authority to regulate areas traditionally supervised by the States' police power"); *California Optometry*, 910 F.2d at 982.

In pursuing this case, FTC runs afoul of federalism principles by anointing itself to interpret not only Congressional intent but NCDPA, to preempt NCDPA,

6

and to "oversee" the state's regulation of the practice of dentistry. *See, e.g.*, Opening, 39-41. FTC's interpretation of FTCA violates the clear statement rule, as Congress was not "'unmistakably clear" and never "manifest[ed]" its intent "to preempt the historic powers of the States... ." *Will*, 491 U.S. at 65 (internal citations omitted). "Absent a basis more reliable than statutory language insufficient to demonstrate a 'clear and manifest purpose' to the contrary, federal courts should resist attribution to Congress of a design to disturb a State's decision... ." *City of Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424, 439-40 (2002).

Both *California Optometry* and *Parker* show that the clear statement rule applies here. In *California Optometry*, FTC argued that it had authority to invalidate state laws and regulations that, in its view, unfairly restrict competition. Applying the clear statement rule, the D.C. Circuit rejected FTC's argument, finding that Congress did not authorize FTC to regulate the sovereign acts of States. 910 F.2d at 978. Moreover, it found that California's regulation of optometry[2] was "quintessentially sovereign" and that accepting FTC's argument would "alter the usual balance between the Federal Government and the States." *Id.* at 982. Relying on *Parker*, the D.C. Circuit held that "[i]n a dual system of government in which, under the Constitution, the states are sovereign, save only as

_____

[2] California State Board of Optometry similarly comprised, by statute, of a majority of licensees.

7

Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Id.* at 981 (quoting *Parker v. Brown*, 317 U.S. 341, 350-51 (1943)).  Indeed, "to give the state-displacing weight of federal law to mere Congressional ambiguity would evade the very procedure for lawmaking on which *Garcia*[3] relied to protect states' interests." *Id.* at 982 (quoting L. Tribe, AMERICAN CONSTITUTIONAL LAW § 6-25, at 480 (2d ed. 1988)); *see also United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results.").  Here, FTC attempts to preempt NC's regulation of dentistry, but fails to advance any jurisprudence demonstrating how NC's regulation of dentistry is not "quintessentially sovereign" and therefore subject to jurisdiction under FCTA.[4]  Of course, in this case, FTC avoided earlier scrutiny by skipping an attempt at rulemaking.

Third, "the doctrine that statutes should be construed so as to avoid difficult constitutional questions" applies when an independent federal agency unilaterally asserts jurisdiction over a state and its agency.  *Vt. Agency of Natural Res.*, 529 U.S. at 787.  Construing FCTA to cover states would expand FTC jurisdiction without Congressional authorization and implicate the Tenth Amendment and the

---

[3] *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985).
[4] Even if the plain meaning of the term "person" were not clear, no deference is warranted to FTC's interpretation, in light of the "clear statement" rule.

separation of powers.  Rules of statutory interpretation foreclose FTC's unfounded interpretation of "persons."

## III.    NCSBDE IS IMMUNE UNDER THE STATE ACTION DOCTRINE.

### A.    FTC Still Offers No Dispositive Cases Supporting Evisceration of State Action Immunity.

Without exception, federal courts grant antitrust immunity to state agencies acting pursuant to clearly-articulated state law.[5]  In its Opening Brief, NCSBDE cites many cases in support of this argument.  FTC simply ignores the vast majority of these, instead relying on several entirely distinguishable cases involving private actors or state agencies acting without support from a clearly-articulated state law.[6]

---

[5] Additionally, there are no cases analyzing an antitrust conspiracy allegation against a state agency.  Only a handful of antitrust cases have even been brought against just a state agency, without allegations of conspiracy between that agency and other parties, such as a professional association.  *See, e.g., Bates v. State Bar of Ariz.*, 433 U.S. 350, 355 (1977); *Hass v. Or. State Bar*, 883 F.2d 1453 (9th Cir. 1989).   Neither case included an analysis of conspiracy; rather, the courts determined the agencies were entitled to state immunity without reaching the issue of conspiracy.

[6] FTC cites *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992) throughout their Response, but at issue in *Ticor* was a state agency's supervision of private actors.  Further, SCOTUS held that immunity could be established if the state "played a substantial role in determining the specifics of the economic policy" at issue.  *Id.* at 635.  In other words, not only can a state agency provide active supervision, but the immunity analysis turns on the issue of a clearly-articulated state law.  *See also Patrick v. Burget*, 486 U.S. 94 (1988) (entirely private conduct with no involvement of state officials).

For example, FTC argues that *FTC v. Monahan* requires a showing of active supervision for state agencies whose members participate in the regulated profession. 832 F.2d 688 (1st Cir. 1987). *Monahan* addresses whether the state board must comply with an FTC-issued subpoena—not whether the board in fact violated FTCA. The court noted that, given the early stages of the investigation and without the benefit of a filed complaint, it simply did not know whether the board acted pursuant to a clearly-articulated statute. Furthermore, at issue in *Monahan* were board rules, not a state law. By contrast, NCSBDE acted pursuant to a clearly-articulated statute.[7]

FTC similarly relies on *Norman's on the Waterfront, Inc. v. Wheatley*, where the court considered whether a state agency properly provided active supervision over an entirely private corporation's actions. 444 F.2d 1011 (3d Cir. 1971). *Norman's* would be on point only if the NC General Assembly passed a law allowing private dentists to price fix and only if dentists then set prices without active supervision by NCSBDE.

*Asheville Tobacco Board of Trade v. FTC*, 263 F.2d 502 (4th Cir. 1959) and *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) actually squarely support

---

[7] Here, FTC admits that "the Commission assumed, without deciding, that the Board's conduct satisfied the clear articulation prong" and that "this issue is not properly before this Court." Response, 29 n.12. Thus, AAI's arguments suggesting that NCSBDE did not satisfy the "clear articulation" prong should be disregarded.

NCSBDE's actions, as discussed in greater detail in NCSBDE's Opening Brief. *See* Opening, 35-37. In *Asheville Tobacco*, this Court considered whether a local board of trade—a corporation created by market participants for the financial benefit of its members—was truly a state actor, ultimately concluding that it was not.[8] In so holding, this Court referenced a list of characteristics that distinguish state agencies from consortiums of private competitors. In contrast to the board of trade, NCSBDE meets these characteristics.[9]

Additionally, the state bar's actions in *Goldfarb* are distinguishable from NCSBDE's actions to enforce NCDPA. There, SCOTUS held that "the threshold inquiry in determining if an anticompetitive activity is state action ... is whether the activity is required by the State acting as sovereign." 421 U.S. at 790; *Kurek v. Pleasure Driveway & Park Dist.*, 557 F.2d 580, 588 (7th Cir. 1977), *vacated on other grounds*, 435 U.S. 992 (1978) (noting that SCOTUS in *Goldfarb* relied on the fact that the state bar "voluntarily joined in what was essentially a private anticompetitive activity" instead of "executing the mandate of the state"). Here, such sovereign compulsion existed; therefore, NCSBDE fits squarely within state action. Notably, SCOTUS recognized the potential for its *Goldfarb* holding be

---

[8] Even if *Asheville Tobacco* were analogous, it was decided decades before *Midcal*.

[9] *See* Opening, 5-8, 37. FTC attempts to liken NCSBDE with the private companies in *Asheville Tobacco*. But, unlike the local trade board in *Asheville Tobacco*, the regulation of dentistry is carried out by public officials who must eschew private interests and act only to protect the public.

11

misconstrued beyond its limited application, indicating that "we intend no diminution of the authority of the State to regulate its professions." 421 U.S. at 793.

FTC urges this Court to decide "whether state regulatory bodies must show active supervision when "dominated" by private market participants with economic incentives to restrain trade." Response, 35-36. But, by law, the licensee Board members are state officials who are not allowed to function as a "private." And, courts have ruled in each comparable case that a state agency enforcing state law need not show active supervision. In fact, courts and FTC often recognize that state agencies themselves may provide active supervision of private individuals' activities. *See, e.g., Flav-O-Rich, Inc. v. N.C. Milk Comm'n*, 593 F. Supp. 13, 18 (E.D.N.C. 1983); *see also Ky. Household Goods Carrier Ass'n*, 139 F.T.C. 404 (2005).

Lacking favorable jurisprudence, FTC cites a 1991 law review article, contending that *Allied Tube & Conduit Corp. v. Indian Head, Inc.*,[10] *Goldfarb*, and *Continental Ore Co. v. Union Carbide and Carbon Corp.* prove "financially interested action is always 'private action' subject to antitrust review." Response, 34 (citing Elhauge, *The Scope of Antitrust Process*, 104 HARV. L. REV. 667, 689

---

[10] *Allied Tube*, like many cases cited by FTC, involved a private, non-governmental association's adoption of rules. Here, the issue is a state legislature's enactment of a statute and a state agency's enforcement of that law.

(1991)).  But, Elhauge ignored extant case law.  *See, e.g., Hass*, 883 F.2d at 1468; *Brazil v. Ark. Bd. of Dental Exam'rs*, 593 F. Supp. 1354, 1362 (E.D. Ark. 1984), *aff'd*, 759 F.2d 674 (8th Cir. 1985).  Furthermore, since 1991, courts have continued to grant immunity to majority licensee state agencies acting pursuant to state law.  *See, e.g., Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1041 (5th Cir. 1998), *cert. denied*, 525 U.S. 982 (1998).

As SCOTUS recently made clear, there are constitutional limits to the extent to which even Congress could intentionally foist its will (or FTC's) upon states via the Commerce Clause.  *See generally Nat'l Fed'n of Indep. Bus. v. Sebelius*, 183 L. Ed. 2d 450 (2012) (Congress can lure state action with funds, but it cannot compel state officials to act in an area traditionally reserved to state governance.).  This would be especially true in the "quintessentially sovereign" realm of professional regulation.

### B.    NCSBDE Establishes Clear Articulation and Active Supervision.

Although it originally alleged otherwise, FTC ultimately "assumed" that NCDPA was clearly articulated.  Nevertheless, FTC argues tautologically that if a state creates a *bona fide* state agency and subjects it to all laws pertaining to the state (including opening meetings, public records, administrative procedures, fiscal oversight, and state ethics), it must still find another statutory way to supervise itself.  Even if active supervision were required, NCSBDE is entitled to immunity

because it acted pursuant to a clearly-articulated state law and because active supervision exists. *See* Opening, 38-39. FTC dismisses state laws assuring such supervision, indeed failing to mention a single state statute other than the NCDPA.

Requiring a more explicit showing of clear articulation and additional direct supervision would demand "a close examination of a state legislature's intent ... [that] would embroil the federal courts in the unnecessary interpretation of state statutes [and] would undercut the fundamental policy of *Parker* and the state action doctrine of immunizing state action from federal antitrust scrutiny." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 44 n.7 (1985) (citing 1 P. Areeda & D. Turner, Antitrust Law ¶212.3(b) (Supp. 1982)); *cf. Wash. Gas Light Co. v. Va. Elec. & Power Co.*, 438 F.2d 248 (4th Cir. 1971) (rejecting argument that no active supervision existed when state agency did not expressly approve or disapprove utility's actions because "[it] is just as sensible to infer that silence means consent, *i.e.* approval"). Particularly here, where NCSBDE is subject to the oversight by NC's Joint Legislative Commission on Governmental Operations and Ethics Commission, active supervision exists. N.C.G.S.§120-76(1) (evaluating state agencies' activities as they relate to "[c]onformity with legislative intent"); N.C.G.S.§§138A-10, 12(o) (Ethics Commission may punish conflict of interest violations).

C.    **Antitrust Scrutiny of How a State Agency Seeks Compliance with a Clearly-Articulated Unauthorized Practice Statute Is Not Good Public Policy.**

Arguing that NCSBDE is dominated by private interests[11] and therefore subject to the "active supervision" requirement, FTC contrasts NCSBDE with other states' boards with less independent rule-making power[12] or more members appointed by the governor.   However, there is **no case law** subjecting state agencies acting pursuant to state law to federal antitrust law—regardless of whether the agency is a majority licensee state board or elected by market participants.[13]  *See, e.g., Hass,* 883 F.2d at 1460 n.3 (Oregon State Bar leadership elected by bar members).   Asking courts to invent criteria differentiating some state agencies from others for the purposes of establishing immunity triggers the concern raised in *City of Columbia v. Omni Outdoor Advertising*:

> [T]he real question is whether a jury can tell the difference – whether *Solomon* can tell the difference – between municipal-action-not-entirely-independent-because-based-partly-on-agreement-with

---

[11] Contrary to FTC's suggestion, state agencies are not more susceptible to private interests than municipalities.   Rossi, *Realizing the Promise of Electricity Deregulation*, 40 WAKE FOREST L. REV. 617, 651-52 (2005) (municipalities at greater risk for interest group capture than states).

[12] NCSBDE's rulemaking ability is not relevant; there is no board rule at issue here.   Indeed, NCSBDE cannot promulgate a rule prohibiting teeth whitening because it would merely repeat the content of NCDPA.  N.C.G.S.§150B-19.

[13] FTC's argument is particularly puzzling, as it has not proven or argued any conspiracy between dentists and NCSBDE members.   Every board member witness swore there was no conspiracy.   Further, the fact that licensee members are elected is a red herring.   There was no evidence showing that board members even mentioned teeth whitening or competition in "campaigns" for election.

15

> private-parties that is *lawful* and municipal-action-not-entirely-independent-because-based-partly-on-agreement-with private parties that is *unlawful*. The dissent does not tell us how to put this question coherently, much less how to answer it intelligently.

499 U.S. 365, 375 n.5 (1991) (emphasis in original). In essence, FTC hints that by changing NCSBDE's structure, the NC General Assembly might avoid subjecting it to antitrust laws, which may carry felony charges and the possibility of treble damages. 15 U.S.C. §3(a). However, such decisions regarding how to regulate professions are within the purview of states, not FTC.

FTC attempts to limit the potentially devastating public policy impact of its position by claiming to only challenge the "unilateral issuance of extra-judicial cease and desist orders," because "there were other means available to the Board, by which to exclude non-dentists from performing teeth whitening." Response, 21, 38.[14] First, FTC distinguishes the apparently lawful "litigation warning" letters from allegedly unlawful cease and desist letters ("C&Ds")—however, both convey the same message: that the recipient must stop any unlawful practice of dentistry.[15] Response, 6. Second, the fact that NCDPA does not **explicitly** authorize C&Ds does not mean NCSBDE acted improperly or violated FTCA; after all, such litigation warning letters are not **explicitly** authorized by NCDPA, either. Third,

---

[14] In making this argument, FTC concedes that the exclusion of illegal teeth whiteners was not an unlawful objective, thereby establishing NCSBDE did not conspire, as discussed *infra*.

[15] *E.g.*, JA 1113 ("In order to avoid [litigation], the Board would like to have your <u>written</u> assurance that you have discontinued the unlawful practice of dentistry.").

FTC offers no authority to dispute that NCSBDE carried out its duty to enforce state law.[16] *Cf. State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 404 (1980) (authority of state board should be liberally construed in light of purpose); N.C.G.S.§90-22(a) (NCDPA to "be liberally construed to carry out these objects and purposes").

FTC's argument belies wise federalism principles by anointing itself arbiter of procedurally-proper state action. *Hallie*, 471 U.S. at 42 (state legislature need not explicitly state that it expected agency to engage in conduct that would have anticompetitive effects). FTC would strip immunity from state agencies if they enforce state law in what FTC deems to be a procedurally defective manner. The Ninth Circuit squarely rejects such a position. Then-Judge Anthony Kennedy stated on behalf of the court: "actions otherwise immune should not forfeit that protection merely because the state's attempted exercise of its power is imperfect in execution under its own law." *Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985) (internal citation omitted).

---

[16] AAI contends NCSBDE "does not challenge FTC's conclusion that '[t]he Board had no authority to issue cease and desist orders under its enabling statute.'" AAI Brief, 16. Such contention misstates the principles underlying state action. *See City of Columbia*, 499 U.S. at 372-73 ("statutes clearly authorize immune conduct when such conduct is the 'foreseeable result' of the statute.").

Areeda and Hovenkamp also warned that antitrust tribunals are not the proper forum to address alleged improper enforcement of state law by state officials:

> [T]he state's own judicial and regulatory systems contemplate that errors will be made, and in the ordinary case the system provides its own correctives. If the federal antitrust court regards every agency decision that is substantively or procedurally incorrect under state law as "unauthorized" for federal antitrust purposes, then the federal courts become the effective regulator of the state's own regulatory mechanism—and this happens whether or not the state itself has provided an adequate policing mechanism. It was certainly not Congress's purpose that the federal courts acting under the antitrust laws should become the standard reviewer not only of federal agency activity but also of state and local activity whenever it is alleged that the government body, though possessing the power to engage in the challenged conduct, has actually exercised its power in a manner not authorized by state law.

P. Areeda & H. Hovenkamp, ANTITRUST LAW ¶224d at 112 (3d ed. 2006). *See also* Garland, *Antitrust and State Action: Economic Efficiency and the Political Process*, 96 YALE L.J. 486, 487 (1987) ("The judiciary should not interfere under the aegis of the antitrust laws with a state's political decision, however misguided it may be, to substitute regulation for the operation of the market.").

By its Final Order in this case, FTC would anoint itself as the "standard reviewer" of the manner in which NCSBDE enforces NCDPA.[17] "Wise and

---

[17] The FTC might not be the best role model for instructing state agencies on how to enforce state statutes. Indeed, unlike FTC, NCSBDE sent a letter. It did not issue a press release like FTC. At the end of the day, the FTC is an administrative agency that must abide by the same constraints as NCSBDE.

efficient federalism calls for no such result [because] ... ordinary errors or abuses in the administration of procedures created or approved by the state should be left for state tribunals to review."  Areeda & Hovenkamp, *supra*, ¶224d at 117.  Indeed, "the state, not the federal antitrust tribunal, should ordinarily be left to respond to agency error, especially when state law creates a private remedy."  *Id.* at 125. Recipients of C&Ds had ample remedies under state law if they believed that they were not violating state law.  However, no recipients (most of whom had direct or indirect legal representation) availed themselves of these state remedies.  FTC's unilateral attempt to regulate North Carolina's regulation of the practice of dentistry contradicts "wise and efficient federalism."  Fundamental tenets of federalism and precedent prohibit FTC from questioning the way states choose to structure their professional licensing agencies and the manner in which a state agency enforces clear public protection statutes.

## IV.    NCSBDE IS NOT CAPABLE OF CONSPIRING WITH ITSELF.

FTC argues that NCSBDE is capable of concerted action because it is comprised of "distinct economic actors, with financial interests in restraining trade in the teeth whitening services market."  This argument is fundamentally flawed on several levels.

First, FTC ignores the paramount point that NCSBDE's capacity to conspire must be considered **in the context of the challenged restraint**—that is, excluding

illegal teeth whitening providers.[18]  *Am. Needle*, *Inc. v. NFL*, 130 S. Ct. 2201, 2214 (2010).  In this specific context, NCSBDE members are not independent decision-makers who determined that unlicensed teeth whiteners acted illegally.  Rather, NCSBDE members operate at the direction of the legislature, which prohibits unlicensed teeth whiteners from "remov[ing] stains, accretions or depositions from the human teeth" or from "tak[ing] or mak[ing] an impression of the human teeth, gums or jaws."  *See* N.C.G.S.§90-29(b).  As such, the General Assembly through the NCDPA—and not NCSBDE—decided to prohibit unlicensed teeth whiteners.

Perhaps recognizing this fatal flaw in their logic, FTC and AAI[19] make a last-ditch argument that neither the ALJ nor the Commission adopted.  They argue that illegal teeth whiteners do not violate NCDPA and that NCSBDE members act as independent decision-makers by "falsely" interpreting the NCDPA for their own

---

[18] In its state action arguments, FTC suggests that it complains only about the **method** through which NCSBDE excluded illegal teeth whiteners.  Response, 38.  As such, FTC concedes that the exclusion of illegal teeth whiteners was not an unlawful objective, and no conspiracy can exist.

[19] AAI's argument is premised upon allegations that FTC, ultimately abandoned.  AAI argues that since the NC statute is not "clear" the NCSBDE must have active supervision.  But the Commission's own witnesses testified at trial that they were "removing stains from teeth"—which is exactly what the statute says must be done by licensed dentists.  That is not a policy, an interpretation or a Board rule.  The legislature decided that and authorized a state agency—NCSBDE—to enforce the statute.  AAI concedes that if a statute is clear, active supervision is not required.

separate economic interest.[20]  FTC and amicus cite no precedent or credible evidence[21] for these positions, and for good reason.  States that have addressed the legality of unlicensed teeth whiteners have found them in violation of their respective dental practice acts.  *See, e.g.* Okla. Op. Att'y Gen. No. 03-13, 2003 Okla. AG LEXIS 13 (Mar. 26, 2003); Kan. Op. Att'y Gen. No. 2008-13, 2008 Kan. AG LEXIS 13 (June 3, 2008); *White Smile USA, Inc. v. Bd. of Dental Exam'rs of Ala.*, 36 So. 3d 9 (Ala. 2009).  Furthermore, NCSBDE presented ample evidence at trial to show that teeth whiteners violate the NCDPA.  *See, e.g.*, JA 639-40, 645, 651-52 (Haywood, Tr.).

Another reason why NCSBDE cannot unlawfully conspire—in the context of excluding illegal teeth whiteners—is that NCSBDE members do not act on economic interests separate from NCSBDE.  As explained previously, most

_____

[20] Since neither the ALJ nor the Commission ruled on whether teeth whitening services constitute the illegal practice of dentistry under NCDPA, FTC's arguments in favor of such a finding are not entitled to any deference.

[21] To show teeth whitening does not remove stains from teeth, FTC relies solely on its expert witness, Dr. Giniger, whose vested interest in this proceeding as a consultant for various teeth whitening companies renders his testimony suspect. Ironically, several of FTC's witnesses who actually operate teeth whitening businesses testified that teeth whitening **does** remove stains from teeth.  *See, e.g.*, Nelson Tr., 818 ("So the only thing that teeth whitening is ... is actually stain removal, but the dentist created the term for marketing purposes 'teeth whitening.'"); Wyant Tr., 906 (Q: " ... [Y]our understanding of what WhiteScience product you used, it was designed to remove stains?"  A: "The product itself?"  Q: "Yes, sir." A: "Yes.").  Indeed, a number of illegal teeth whiteners marketed their services as stain removal.  *E.g.*, JA 1520 ("removes stains from coffee, tea, wine, tobacco, etc."); JA 1620 (peroxide breaks down stains); RX 1626 (teeth whitening "attacks" stains), JA 1641 ("Remove coffee, tea, & tobacco stains!").

licensee NCSBDE members did not have a financial interest in excluding non-dentist teeth-whitening services.  Opening, 16-17, 45-46.  In response, AAI argues that capacity to conspire still exists, even if not all NCSBDE members actually compete in the relevant market,[22] because they potentially could.

AAI's argument goes too far, as it assumes that all NCSBDE members—regardless of the evidence presented—have a substantially similar economic interest in teeth whitening.  *See N. Tex. Specialty Physicians v. FTC*, 528 F.3d 346, 357 (5th Cir. 2008), *cert. denied*, 555 U.S. 1170 (2009) ("[T]he correct analysis is not whether the board members compete directly with one another but whether the organization is controlled by members with substantially similar economic interests.")  By this logic, everyone potentially competes in the market, because both licensed and unlicensed entities legally can engage in teeth whitening.

Each of the cases cited by AAI for this position requires some **actual and not hypothetical** evidence of substantially similar economic interests.  *See United*

---

[22] AAI questions NCSBDE's rationale that "members who earn revenue from teeth whitening kits are not actual competitors."  AAI Brief, 27 n.16.  To the detriment of NCSBDE, the relevant market definition was a moving target throughout the administrative proceeding.  In the Complaint, FTC expressly excluded teeth whitening kits and over-the-counter products from its definition of the relevant market.  JA 13.  The ALJ agreed, finding the relevant market included dentist and non-dentist teeth whitening services, but not self-administered products.  JA 8.  In its Answering Brief to NCSBDE's Appeal Brief, FTC urged the Commission to uphold the ALJ's definition of the relevant market.  Answering Brief, 31-33.  Instead, the Commission held that the relevant market included take-home kits and over-the-counter products.  JA 30.

*States v. Sealy, Inc.*, 388 U.S. 350, 352 (1967) (all licensees shared substantially similar economic interest in actually reselling bedding products); *North Texas Specialty Physicians*, 528 F.2d at 357 (finding capacity to conspire because of substantially similar economic interests when majority of members specialized in pulmonary, cardiovascular, and urology diseases); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 214-15 (D.C. Cir. 1986) (all agents had substantially similar economic interests when they actually provided moving services and wished to maintain agency contracts with Atlas); *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 379 (S.D.N.Y. 2001) (member banks all have substantially similar economic interests in actually issuing credit cards and maintaining membership with Visa USA).

Thus, even if not all NCSBDE members actually compete in the business of teeth whitening, FTC still must show that they have substantially similar economic interests in excluding non-dental teeth whitening. In light of the evidence that less than a majority of NCSBDE members actually provided teeth whitening services during the relevant period—coupled with the statutory safeguards to remove any possibility of personal financial interest[23]—FTC is unable to do so.

---

[23] AAI and FTC argue that statutory safeguards do not remove NCSBDE members' potential financial interests, but they ignore the most stringent statutes. *See, e.g.*, N.C.G.S.§§138A-12(o) (potential removal by Ethics Commission), 138A-15(d) (no participation if potential conflict of interest), 138A-39(a) (duty to eliminate

FTC attempts to analogize NCSBDE to the defendants in the recently-decided *Robertson v. Consolidated Multiple Listings Service, Inc.*, 679 F.3d 278 (4th Cir. 2012). However, for the reasons set forth above, NCSBDE is not "a group of competitors like the members of an MLS [who] join together to cooperate in the conduct of their business." *Id.* at 288. There is no evidence that NCSBDE members "combined to use [NCSBDE] as an instrumentality to maximize their individual profits." *Id.* As such, this case does not naturally give rise to "antitrust suspicions." *Id.* To the contrary, state officials such as NCSBDE members should be afforded a presumption of good faith in the conduct of their public service. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (recognizing a presumption of honesty and integrity among the members of the state board in their conduct).

## V. NCSBDE DID NOT CONSPIRE TO ILLEGALLY RESTRAIN TRADE.

In the Opening Brief, NCSBDE established that FTC failed to prove that the Board actually engaged in concerted action (assuming without conceding NCSBDE has the capacity to conspire). Neither FTC nor amicus counter these arguments.

First, FTC argues that NCSBDE had a conscious commitment to a common scheme designed to achieve an unlawful objective because NCSBDE allegedly: (1)

---

disqualifying conflicts of interest). These affirmative mandates are not analogous to a general "fiduciary duty."

24

authorized other C&Ds; (2) on several occasions, discussed illegal teeth whitening services before voting on related issues,[24] and (3) used substantially similar C&Ds over a period of years. This characterization of the evidence is false and misleading. Further, even if it were true, this supposed evidence at worst shows that NCSBDE members coordinated to prevent illegal teeth whitening but has no bearing on the key issue: whether NCSBDE's efforts to prevent illegal teeth whitening were designed to achieve an unlawful objective. FTC presents no evidence to show that NCSBDE members acted with any intent other than to uphold NCDPA—a lawful and laudable objective. As such and as fully explained in the Opening Brief, FTC failed to establish the first prong necessary to show concerted action.

Second, FTC argues that evidence of dentists' complaints to NCSBDE about illegal teeth whitening is sufficient to exclude the possibility that NCSBDE members acted independently. However, it is well established by *Monsanto* and its progeny that "[p]ermitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about 'in response to' complaints, could deter or penalize perfectly legitimate conduct." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984); *Parkway Gallery Furn., Inc. v. Kittinger/Pennsylvania House Group, Inc*., 878 F.2d 801, 804 (4th Cir. 1989)

---

[24] AAI falsely asserts that NCSBDE voted to send out some C&Ds, but the record is devoid of any such evidence.

25

("This Court has similarly been sensitive to *Monsanto's* requirement that there be clear evidence of concerted activity."); *Cooper v. Forsyth County Hosp. Auth., Inc.*, 789 F.2d 278, 281 (4th Cir. 1986) (mere contacts and communications insufficient evidence from which to infer conspiracy). Particularly as FTC has abandoned any allegations of conspiracy between dentists and NCSBDE, this evidence does not tend to exclude the possibility that NCSBDE acted with the independent intent to protect the health, safety and welfare of North Carolinians or to protect the professional reputation of dentists.

Even if evidence of complaints were sufficient, FTC misrepresents the content and motivation of the complaints received. The complaints did not originate from Board members, but were unsolicited third party submissions. FTC claims that dentists complained about rival's prices, not consumer harm. To the contrary, of the **47 C&Ds** at issue in this case, **24 C&Ds** were initiated by complaints directly raising health and safety concerns. Several complaints raising health/safety concerns triggered 16 C&Ds to various BleachBright kiosks. RX4-21 ("don't think it's in the patients' best interest"); JA 1521-22 ("... these people are pretending to offer something that only a dental professional should be doing in order to protect the interest of the patient in all areas.") The other eight C&Ds were triggered by the following:

- JA 1544 ("they use 44% carbamide peroxide administered in a "gel tray"!!");

26

- JA 1385 (concern about use of peroxide solution, exposure to high intensity light, and lack of prior dental examination);

- JA 1553 (use of peroxide);

- JA 1578-79 (consumers suffered burns);

- JA1590-93 (patient suffered ulcers and infection);

- CX310-1("It is my hope that the Board can be proactive in protecting the consumer by reserving tooth bleaching to the licensed dental professional."); and

- JA 1637 ("... I am concerned about the safety of the people getting it done.").

Furthermore, **31 C&Ds** were triggered by complaints expressly questioning the legality of the non-dentist teeth whitening services.[25]

Only **three C&Ds** were triggered by dentists' complaints that expressly referenced price.[26] However, two of these complaints[27] also raised significant concerns over health, safety, and the professional reputation of dentists. One complaint[28] was made by a UNC-Chapel Hill professor of dentistry. If suggestive of anything, these complaints suggest that NCSBDE members acted for reasons

---

[25] JA 1142, 1237, 1516, 1521-22, 1546, 1549, 1553, 1578, 1580, 1588, 1599, 1601, 1639; CX292-1; CX310-1; RX4-11, 19, 27; RX32-2.
[26] JA 1511, 1516, 1544. A number of other complaints included a copy of the illegal teeth whitener's advertisement, which sometimes included the price. Unless the **dentist** referenced the price, however, such ads are not reflective of their concerns.
[27] JA 1516, 1544.
[28] JA 1544.

**other** than their own personal financial benefit.  Therefore, FTC also failed to establish the second prong necessary to show concerted action.

## VI.  STATE AGENCIES' PURSUIT OF VOLUNTARY COMPLIANCE WITH UNAUTORIZED PRACTICE STATUTES IS NOT AN UNREASONABLE RESTRAINT OF TRADE.

FTC's restraint of trade analysis is inapplicable because SCOTUS has **never** applied such framework to a state agency acting pursuant to a clearly-articulated state law.  Contrary to FTC's portrayal, NCSBDE did not unreasonably restrain trade simply because it is a public actor; rather, NCSDBE acted reasonably by enforcing clear state statutes, as required by law.  FTC's entire attack is against conduct mandated by the NC General Assembly.

Additionally, FTC fails to respond to NCSBDE's argument that the Commission improperly included **illegal** services in the relevant market.  FTC does not refute that the only affected activities were **illegal** under state law.  *Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945, 952 (W.D.N.C. 2000) (claim for injury in an illegal market not recognized under antitrust law); *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 1048, 1079 (D. Colo. 2004) (same).

Under its untenable standard, FTC might not challenge the immunity of municipalities acting pursuant to state law or private corporations restraining trade while supervised by a state agency.  But, it would, for example, challenge the

28

immunity of the NC Bar's[29] investigation of unlicensed practice pursuant to state statute[30] if it did not agree with the grounds of the investigation. Additionally, the Bar would not enjoy the benefit of a thorough rule of reason analysis, as private corporations would. The Bar could not raise the defense that it acted pursuant to clearly-articulated state law, or that it acted only to protect the public. FTC's unfathomable conclusions are exactly why the state action doctrine was developed—to prevent antitrust "plaintiffs from look[ing] behind the actions of state sovereigns and bas[ing] their claims on perceived conspiracies to restrain trade among the committees, commissions, or others who necessarily must advise the sovereign." *Hoover v. Ronwin*, 466 U.S. 558, 580 (1984).

## CONCLUSION

Therefore, FTC's dispositive motions and its Opinion should be reversed and its Final Order vacated.

---

[29] Bar officers elected by its members. 27 N.C.A.C. 1A.0304.
[30] N.C.G.S.§ 84-37(a).

Respectfully submitted, this the 19th day of July, 2012.

/s/ Noel L. Allen

Noel L. Allen
M. Jackson Nichols
Catherine E. Lee
Nathan E. Standley
Brie A. Allen, of counsel
ALLEN, PINNIX & NICHOLS, P.A.
Post Office Drawer 1270
Raleigh, North Carolina 27602
Telephone: 919-755-0505
Facsimile: 919-829-8098
Email: nallen@allen-pinnix.com
      mjn@allen-pinnix.com
      clee@allen-pinnix.com
      nstandley@allen-pinnix.com
      ballen@allen-pinnix.com

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Petitioner affirms and declares as follows:

This brief complies with the type-volume limitation of Fed. R. App. 28.1(e) and Fed. R. App. P. Rule 32(a)(7) for a brief utilizing proportionally-spaced font, because the length of this brief is 6,981 words, excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(a)(7)(B)(iii).

This brief also complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Executed this 19th day of July, 2012.

s/  Noel L. Allen
Noel L. Allen

*Attorney for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Appellate CM/ECF System on July 19, 2012.

I certify that all parties to this case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF System.

Executed this 19th day of July, 2012.

s/  Noel L. Allen
Noel L. Allen

*Attorney for Petitioner*

32