NO. 12-1172

In The

# United States Court Of Appeals

### For The Fourth Circuit

# THE NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS,

*Petitioner,*

v.

# FEDERAL TRADE COMMISSION,

*Respondent.*

## ON PETITION FOR REVIEW OF AN ORDER OF THE FEDERAL TRADE COMMISSION

————————————

## PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

————————————

Noel L. Allen
M. Jackson Nichols
ALLEN, PINNIX & NICHOLS, P.A.
Post Office Box 1270
Raleigh, North Carolina 27602
(919) 755-0505

Matthew W. Sawchak
Stephen D. Feldman
Dixie T. Wells
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina 27636
(919) 865-7000

*Counsel for Petitioners*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION AND STATEMENT OF PURPOSE ..........................................1

DISCUSSION ........................................................................3

    1.    The Panel Opinion Conflicts with <u>Hallie</u> ..............................................3

        a.    The Panel Opinion Treats State Agencies as
               Less Governmental than Municipalities ....................................5

        b.    The Panel's Focus on Agency Composition
               Undermines States' Ability to Structure Their
               Own Governments ....................................................7

        c.    The Panel's Tests for Judging Agency Composition
               Will Fuel Antitrust Litigation Against State Agencies..............8

    2.    The Panel Opinion Conflicts with <u>Omni</u>.............................................11

    3.    The Panel Opinion Conflicts with Decisions of Other
        Courts of Appeals................................................................12

    4.    The Panel's Analysis of the State-Action Exemption
        Conflicts with the Theory of Liability in This Case ..........................13

CONCLUSION ........................................................................15

CERTIFICATE OF SERVICE ...........................................................16

i

# TABLE OF AUTHORITIES

Page(s)

Cases

Asheville Tobacco Bd. of Trade v. FTC,
    263 F.2d 502 (4th Cir. 1959) .......................................................................14

Barsky v. Bd. of Regents,
    347 U.S. 442 (1954)...............................................................................8

Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,
    445 U.S. 97 (1980)...........................................................................1, 4

Cine 42nd St. Theater Corp. v. Nederlander Org.,
    790 F.2d 1032 (2d Cir. 1986) ..................................................................2, 13

City of Columbia v. Omni Outdoor Adver., Inc.,
    499 U.S. 365 (1991)................................................................... 2, 11-12

City of Lafayette v. La. Power & Light Co.,
    435 U.S. 389 (1978)..........................................................................4, 7, 11

Earles v. State Bd. of Certified Accountants,
    139 F.3d 1033 (5th Cir. 1998) ................................................................. 2, 12-13

FTC v. Phoebe Putney Health Sys., Inc.,
    133 S. Ct. 1003 (2013)......................................................................1, 5

Goldfarb v. Va. State Bar,
    421 U.S. 773 (1975)..........................................................................4, 5

Hancock Indus. v. Schaeffer,
    811 F.2d 225 (3d Cir. 1987) .......................................................................13

Hass v. Or. State Bar,
    883 F.2d 1453 (9th Cir. 1989) .......................................................................13

In re Guess,
    393 S.E.2d 833 (N.C. 1990) .......................................................................9

Int'l Acad. of Oral Med. & Toxicology v. N.C. State Bd.
of Dental Exam'rs, No. 5:05-CV-856-D2,
2006 U.S. Dist. LEXIS 67103 (E.D.N.C. May 31, 2006) ............................6

N.C. State Bd. of Dental Exam'rs v. FTC,
No. 12-1172, 2013 WL 2367806 (4th Cir. May 31, 2013) ...................passim

Neblett v. Carpenter,
305 U.S. 297 (1938)............................................................................ 7-8

S.C. State Bd. of Dentistry v. FTC,
455 F.3d 436 (4th Cir. 2006) ...............................................................1

S. Motor Carriers Rate Conference, Inc. v. United States,
471 U.S. 48 (1985)......................................................................4, 8, 9

Town of Hallie v. City of Eau Claire,
471 U.S. 34 (1985)...................................................................passim

Versiglio v. Bd. of Dental Exam'rs,
686 F.3d 1290 (11th Cir. 2012) ...................................................6

Will v. Mich. Dep't of State Police,
491 U.S. 58 (1989)...................................................................6


Administrative Decision

N.C. Bd. of Dental Exam'rs,
151 F.T.C. 607 (2011), aff'd, No. 12-1172, 2013
WL 2367806 (4th Cir. May 31, 2013) ..........................................5


Statutes

N.C. Gen. Stat. §§ 90-22 to -48.3 ..........................................................5

N.C. Gen. Stat. § 90-22(b) ..............................................................6, 7

N.C. Gen. Stat. § 90-22(c) ..................................................................7

N.C. Gen. Stat. § 120-76(1)(d) ............................................................7

N.C. Gen. Stat. § 132-6 ................................................................6

N.C. Gen. Stat. §§ 138A-2 to -3 ...................................................6

N.C. Gen. Stat. § 138A-21 ............................................................6

N.C. Gen. Stat. §§ 138A-22 to -24 ................................................6

N.C. Gen. Stat. §§ 138A-31 to -37 ................................................6

N.C. Gen. Stat. § 138A-40 ............................................................6

N.C. Gen. Stat. § 143-318.10 .........................................................6

N.C. Gen. Stat. § 160A-194 ..........................................................7

S.C. Code Ann. § 40-38-10 ..........................................................10

Book

Morris M. Kleiner, <u>Licensing Occupations:  Ensuring Quality or Restricting Competition?</u> (2006) .........................................................3

Journal Article

Thomas M. Jorde, <u>Antitrust and the New State Action Doctrine:  A Return to Deferential Economic Federalism</u>, 75 Calif. L. Rev. 227 (1987) ..................8

Internet Source

<u>Licensed Occupations</u>, America's Career InfoNet, www.careerinfonet.org/licensedoccupations/lois_state.asp?nodeid =16&by=occ (last visited July 15, 2013) ........................................3

## INTRODUCTION AND STATEMENT OF PURPOSE

This appeal raises a question of exceptional importance: When can the federal antitrust laws condemn enforcement efforts by state government agencies? On this question, the opinion by a panel of this Court conflicts with decisions of the Supreme Court, as well as decisions of other courts of appeals.

North Carolina's General Assembly created the state agency in this case, the North Carolina State Board of Dental Examiners, to protect the public from unsafe dental practices. In response to antitrust claims by the Federal Trade Commission, the State Board raised the state-action doctrine as a defense.

Under the state-action doctrine, the antitrust laws do not "bar States from imposing market restraints 'as an act of government.'" FTC v. Phoebe Putney Health Sys., Inc., 133 S. Ct. 1003, 1010 (2013) (quoting Parker v. Brown, 317 U.S. 341, 352 (1943)). The state-action doctrine also extends to private parties, but only if the private parties show that a state actively supervised their conduct. Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105 (1980); accord S.C. State Bd. of Dentistry v. FTC, 455 F.3d 436, 442 (4th Cir. 2006) (likewise describing the active-supervision requirement as one for private parties).

Here, the panel held that the active-supervision requirement—the state-action test for private parties—applies to a state government agency. N.C. State Bd. of Dental Exam'rs v. FTC, No. 12-1172, 2013 WL 2367806, at *5-6 (4th Cir.

May 31, 2013) [hereinafter Panel Op., citing Westlaw pagination].  This decision

conflicts with Supreme Court decisions.  For example:

- In <u>Town of Hallie v. City of Eau Claire</u>, 471 U.S. 34 (1985), the
  Supreme Court expressly predicted that the state-action doctrine
  would not require state agencies to prove active supervision.  <u>Id.</u> at 46
  n.10.  The panel opinion calls this prediction "inapplicable."  Panel
  Op. at *4 n.4.

- In <u>City of Columbia v. Omni Outdoor Advertising, Inc.</u>, 499 U.S. 365
  (1991), the Supreme Court held that antitrust liability cannot turn on a
  government official's private interests.  <u>Id.</u> at 377-79.  Here, the panel
  opinion holds the State Board liable precisely <u>because of</u> board
  members' presumed interests.  <u>See</u> Panel Op. at *5-6.

The panel opinion also conflicts with decisions of other courts of appeals,

which have held that the state-action doctrine does not require state agencies to

show active supervision.  <u>See, e.g.</u>, <u>Earles v. State Bd. of Certified Accountants</u>,

139 F.3d 1033, 1041-42 (5th Cir. 1998); <u>Cine 42nd St. Theater Corp. v.</u>

<u>Nederlander Org.</u>, 790 F.2d 1032, 1047 (2d Cir. 1986).

The opinion here also uses unpredictable standards to decide whether a state

agency must prove active supervision—standards such as whether a state agency is

"quintessential."  Panel Op. at *4 n.4.  The vagueness of these standards will

encourage regulated parties to use antitrust claims to defeat the enforcement efforts of state agencies throughout this Circuit.

Finally, the panel opinion rests on a contradiction: It treats the State Board as a private actor for state-action purposes, but it holds the State Board liable based on how it exercised government power.

In the Fourth Circuit alone, over 160 state agencies regulate more than 2.6 million licensees.[1] A decision that imposes a novel theory of antitrust liability on these agencies, in conflict with decisions of the Supreme Court and other courts of appeals, warrants en banc review.

<u>DISCUSSION</u>

The panel's conclusion that the State Board must prove active supervision conflicts with Supreme Court decisions and other important considerations.

1.    <u>The Panel Opinion Conflicts with</u> Hallie.

In <u>Hallie</u>, the Supreme Court held that municipalities can satisfy the state-action doctrine without proving active supervision. 471 U.S. at 46. In footnote 10 of <u>Hallie</u>, the Court went on to state that although it was not yet deciding the

---

[1]    <u>See</u> Morris M. Kleiner, <u>Licensing Occupations: Ensuring Quality or Restricting Competition?</u> 103-04 tbl.5.2 (2006); <u>Licensed Occupations</u>, America's Career InfoNet, www.careerinfonet.org/licensedoccupations/lois_state.asp?nodeid =16&by=occ (last visited July 15, 2013).

question, statewide agencies likely need not prove active supervision.  Id. at 46 n.10.

The panel opinion expressly departs from footnote 10 of Hallie.  Panel Op. at *4 n.4.  The opinion offers two reasons, but neither reason justifies the departure.

First, the panel opinion states that, according to Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48 (1985), Midcal[2] applies to state agencies.  Panel Op. at *4 n.4.  The passage in Southern Motor that the panel opinion cites, however, simply refers back to footnote 10 of Hallie.  Southern Motor, 471 U.S. at 57.  Thus, the panel's authority for departing from footnote 10 of Hallie actually reinforces that footnote.

Second, the panel opinion states that Hallie must be read in light of an older decision, Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975).  Panel Op. at *4 n.4.  Goldfarb, however, is not a case about active supervision.  Indeed, it was decided five years before the active-supervision requirement came into being.  See Midcal, 445 U.S. at 104-06.  Instead, Goldfarb involved a predecessor of the modern "clear

---

[2]      In Midcal, the Supreme Court held that a private party who asserts the state-action doctrine must satisfy both of two tests:  "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself."  Midcal, 445 U.S. at 105 (quoting City of Lafayette v. La. Power & Light Co., 435 U.S. 389, 410 (1978)).  Given the context of footnote 4 of the panel opinion, its short mention of Midcal refers to both of the Midcal tests that private parties must satisfy.

articulation" requirement. See Goldfarb, 421 U.S. at 791.[3] Further, Hallie itself cites Goldfarb. Hallie, 471 U.S. at 45. Thus, the Supreme Court took Goldfarb into account when it wrote Hallie footnote 10, which says that statewide agencies likely need not show active supervision.

The panel's departure from Hallie deserves review for three additional reasons.

> a. The Panel Opinion Treats State Agencies as Less Governmental than Municipalities.

Hallie footnote 10 was an extension of that decision's core holding, a holding that municipalities need not show active supervision. Hallie, 471 U.S. at 45-46; accord Phoebe Putney, 133 S. Ct. at 1010-11 (stating that private parties must show active supervision, but "substate government entities" need not).

Here, contrary to Hallie, the panel opinion treats a statewide agency as less governmental than a municipality. See Panel Op. at *5-6. This treatment is mistaken. The same considerations that led the Hallie Court to reject an active-supervision requirement for municipalities apply equally to state agencies. For example, a state agency, like a municipality, is bound by clearly articulated state policies: the policies stated in its organic statute. See, e.g., N.C. Gen. Stat. §§ 90-22 to -48.3 (2011). In addition, open government laws and other forms of

---

[3]     Here, the FTC assumed that the State Board satisfied the "clear articulation" requirement. N.C. Bd. of Dental Exam'rs, 151 F.T.C. 607, 617 n.8 (2011), aff'd, No. 12-1172, 2013 WL 2367806 (4th Cir. May 31, 2013).

oversight make a state agency "more likely to be exposed to public scrutiny than is private conduct." Hallie, 471 U.S. at 45 n.9; see, e.g., N.C. Gen. Stat. § 132-6 (opening agency records to public review); id. § 143-318.10 (making agency meetings open to the public); id. §§ 138A-2, -3, -21, -22 to -24, -31 to -37, -40 (imposing multiple ethics requirements on state agencies); id. § 120-76(1)(d) (exposing state agencies to legislative review for "[c]onformity with legislative intent").

To be sure, state agencies and municipalities differ in certain respects. The differences, however, show that state agencies are more statelike than municipalities are. For example:

- A state agency, unlike a municipality, has statewide jurisdiction. The State Board, for its part, is assigned to regulate "the practice of dentistry in this State." Id. § 90-22(b).

- The State Board and similar agencies are considered arms of the state under the Eleventh Amendment. Municipalities are not. Compare Versiglio v. Bd. of Dental Exam'rs, 686 F.3d 1290, 1293 (11th Cir. 2012), and Int'l Acad. of Oral Med. & Toxicology v. N.C. State Bd. of Dental Exam'rs, No. 5:05-CV-856-D2, 2006 U.S. Dist. LEXIS 67103, at *4-6 (E.D.N.C. May 31, 2006), with Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989).

6

- Municipalities, even in their own territories, cannot regulate in conflict with state agencies.  See, e.g., N.C. Gen. Stat. § 160A-194.

For these reasons, the Hallie Court's rejection of an active-supervision requirement for municipalities applies with even greater force to state agencies.

### b.    The Panel's Focus on Agency Composition Undermines States' Ability to Structure Their Own Governments.

Another concern with the panel's departure from Hallie is the central reason for the departure:  the State Board's composition.  The panel states expressly that active supervision is required because the State Board "is operated by market participants who are elected by other market participants."  Panel Op. at *6.

This reasoning attaches antitrust liability to choices made by the North Carolina General Assembly.  It is the General Assembly, after all, that decided that six State Board members must be practicing dentists.  N.C. Gen. Stat. § 90-22(b). Likewise, the General Assembly decided that State Board members would be chosen by election, instead of another process.  Id. § 90-22(b)-(c).

Imposing liability based on these legislative choices violates the federalism principles that underlie the state-action doctrine.  The Supreme Court has emphasized the states' "freedom under our dual system of federalism to use their municipalities to administer state regulatory policies."  City of Lafayette v. La. Power & Light Co., 435 U.S. 389, 415 (1978).  This same freedom protects states' decisions on their own government structure.  See Neblett v. Carpenter, 305 U.S.

297, 302 (1938); Thomas M. Jorde, <u>Antitrust and the New State Action Doctrine: A Return to Deferential Economic Federalism</u>, 75 Cal. L. Rev. 227, 230-31 (1987).

The ability to regulate professionals, likewise, is "a vital part of a state's police power." <u>Barsky v. Bd. of Regents</u>, 347 U.S. 442, 449 (1954). The state-action doctrine shields this police power, whether a state exercises it by enacting pinpoint legislation or by delegating authority to a specialized agency. Indeed, the Supreme Court's state-action decisions expressly recognize states' authority to delegate to specialized agencies. <u>See Southern Motor</u>, 471 U.S. at 63-64.

By making antitrust liability turn on how the General Assembly structured the State Board, the panel opinion violates these principles of federalism.

      c.    The Panel's Tests for Judging Agency Composition Will Fuel Antitrust Litigation Against State Agencies.

The panel's discussion of the State Board's structure has another troubling feature. Even though the panel opinion treats the agency's structure as a pivotal consideration, it judges that structure by unclear standards.

The opinion states, for example, that agencies "more quintessential" than the State Board might not need to show active supervision. Panel Op. at *4 n.4. The opinion does not, however, define quintessentiality in a state agency. The fact that the State Board—an agency that the General Assembly created over 130 years ago—did not qualify as quintessential shows the vagueness of that concept.

The opinion also states that active supervision must be shown "when a state agency appears to have the attributes of a private actor and is taking actions to benefit its own membership." Id. at *5. In addition, the opinion favorably quotes the FTC's test: the tribunal's "degree of confidence that the entity's decision-making process is sufficiently independent from the interests of those being regulated." Id. at *4 (quoting 151 F.T.C. at 619).

These vague standards will encourage antitrust litigation against state agencies, undermining agencies' regulatory efforts. Because state agencies need specialized expertise, they often include multiple members of the professions they regulate. See, e.g., Southern Motor, 471 U.S. at 64 (acknowledging that state agencies handle problems "outside the competence of[ ] the legislature"); In re Guess, 393 S.E.2d 833, 837 (N.C. 1990) ("Our legislature recognized [the] need for expertise when it created a Board of Medical Examiners composed of seven licensed physicians and one additional member."). Now, however, when state agencies include licensees as members, they can be accused of "appear[ing] to have the attributes of a private actor" and "taking actions to benefit [their] own membership." Panel Op. at *5.

The plaintiffs who will invoke these standards in the future, moreover, will not be the FTC. They will be unsuccessful applicants and reprimanded licensees

9

from the 160 professional licensing agencies in this Circuit.[4]

Perhaps recognizing the explosive potential of antitrust lawsuits against state agencies, the panel emphasized that the State Board's dentist members are elected by licensees. See id. at *5-6; id. at *11-12 (Keenan, J., concurring). Making the state-action doctrine turn on this factor, however, conflicts with the North Carolina General Assembly's freedom to structure the state's agencies. See supra pp. 7-8.

In addition, even if the panel's elected/appointed distinction were sound in theory, it would break down in practice. In this Circuit, the composition of agencies falls along a spectrum with no obvious stopping points. Consider, for example, an agency in which the governor appoints members, but does so from a slate of candidates who are elected by licensees. See S.C. Code Ann. § 40-38-10 (2011) (Board of Examiners in Opticianry). Would the governor's appointees to this agency be considered "chosen by and accountable to their fellow market participants"? Panel Op. at *5. Failing applicants and wayward licensees will have every incentive to litigate questions like this one.

"Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which

---

[4]    Imagine, for example, that a state bar sets a score of 60 as the minimum passing score on a bar exam. Exam takers who fail the exam will cite the panel opinion here and argue that the state bar, made up of lawyers, has picked the passing score to keep new competitors out of the profession. The panel opinion might well allow such a claim.

the Government conducts it." <u>Lafayette</u>, 435 U.S. at 413 n.41 (quoting <u>Indian</u>

<u>Towing Co. v. United States</u>, 350 U.S. 61, 67-68 (1955)).  The panel opinion

overlooks this principle.  The public/private distinctions in the opinion will spark

litigation and defeat states' regulatory efforts.

2.     <u>The Panel Opinion Conflicts with</u> Omni.

In <u>Omni</u>, the Supreme Court rejected the argument that antitrust liability can

turn on government officials' private interests.  <u>Omni</u>, 499 U.S. at 376-77.  The

Court treated that argument as inimical to the goals of the state-action doctrine.  <u>Id.</u>

at 377-79.  The Court pointed out that "[f]ew governmental actions are immune

from the charge that they are 'not in the public interest.'"  <u>Id.</u> at 377.

The panel opinion overlooks these principles.  At key points, the opinion

relies on inferences about State Board members' interests.  The opinion describes

the State Board's decisions as "financially interested action."  Panel Op. at *5

(quoting Einer R. Elhauge, <u>The Scope of Antitrust Process</u>, 104 Harv. L. Rev. 667,

689 (1991)).  It also suggests that the Board acted "to benefit its own

membership."  <u>Id.</u>  The opinion uses similar reasoning when it concludes that the

State Board, a single agency, could conspire within itself.  <u>See id.</u> at *7.

These aspects of the panel opinion involve the same "probing of the official 'intent'" and "<u>ex post facto</u> judicial assessment of 'the public interest'" that the Supreme Court disapproved in <u>Omni</u>.  499 U.S. at 377.[5]

3.    <u>The Panel Opinion Conflicts with Decisions of Other Courts of Appeals</u>.

The panel opinion not only diverges from the Supreme Court's decisions in <u>Hallie</u> and <u>Omni</u>, but also conflicts with the decisions of other courts of appeals. Those decisions hold directly that state agencies need not prove active supervision.

For example, in <u>Earles</u>, an accountant filed an antitrust challenge to a rule adopted by the Louisiana Board of Certified Public Accountants.  139 F.3d at 1034.  Louisiana's state legislature created this board to regulate the practice of accounting.  <u>Id.</u> at 1035.  The Fifth Circuit held that "there is no need for active supervision" of the CPA board, "[d]espite the fact that the [b]oard is composed entirely of CPAs who compete in the profession they regulate."  <u>Id.</u> at 1041.  This conclusion, the court noted, was expressly forecast by <u>Hallie</u>.  <u>Id.</u> at 1042.

Here, the panel opinion seeks to distinguish <u>Earles</u> by calling the Louisiana CPA Board "more akin to a municipality than a private actor."  Panel Op. at *5 n.6.  As noted above, however, statewide agencies are at least as governmental as a

---

[5]    <u>Omni</u> also holds that the state-action doctrine does not turn on pinpoint state-law authorization for an agency's actions.  <u>Compare Omni</u>, 499 U.S. at 371-72, <u>with</u> Panel Op. at *1, *6, *8 n.9 (suggesting that state law did not authorize the State Board to send its cease-and-desist letters).

municipality is.  See supra pp. 5-7.  Here, moreover, the State Board faces the same types of public scrutiny that the Earles court found important in its analysis.  See Earles, 139 F.3d at 1041; supra pp. 5-6.

The Second Circuit's decision in Nederlander, likewise, applied the state-action doctrine to a statewide agency:  New York's Urban Development Corporation (UDC).  790 F.2d at 1035-36.  The court pointed out that a state agency, like a municipality, is a product of state legislation.  Id. at 1047.  Relying on Hallie footnote 10, the court did not require the UDC to prove active supervision.  Id.[6]

This circuit split—a byproduct of the panel opinion's divergence from Hallie—is a mark of the exceptional importance of this case.

4.    The Panel's Analysis of the State-Action Exemption Conflicts with the Theory of Liability in This Case.

Finally, the panel opinion rests on a contradiction.  Even though it affirms a judgment that is based on the Board's exercise of government authority, the opinion treats the State Board as nongovernmental.

In the decision below, the FTC specifically relied on the State Board's government power when it found an anticompetitive effect.  J.A. 294-96.

---

[6]    Several other federal appellate decisions, likewise, hold state agencies immune under the state-action doctrine without a showing of active supervision.  These decisions include, among others, Hass v. Oregon State Bar, 883 F.2d 1453, 1459-61 (9th Cir. 1989), and Hancock Industries v. Schaeffer, 811 F.2d 225, 232 n.4, 234-36 (3d Cir. 1987).

The panel opinion not only affirms the FTC's decision, but analyzes the State Board's government power in a similar way. The opinion describes the State Board's offense as "forcing low-cost teeth-whitening providers from the market." Panel Op. at *10 (emphasis added). Further, the opinion treats government power as the force at issue. It states that the Board sent cease-and-desist letters on official letterhead. It points out that several of these letters referred to the criminal status of the unauthorized practice of dentistry. Id. at *2.

The panel's reliance on the Board's government power contradicts its conclusion that "the Board is a private actor under the antitrust laws, [so] there is no federalism issue." Id. at *11; see also id. at *10 (calling the Board a professional organization and likening its enforcement actions to a group boycott).

The State Board's government authority also shows a key difference between this case and Asheville Tobacco Board of Trade v. FTC, 263 F.2d 502 (4th Cir. 1959). See Panel Op. at *5 (citing Asheville). The "regulations" at issue in Asheville stemmed from private contracts, not from government rulemaking. See Asheville, 263 F.2d at 509-10; see also id. at 510 (noting that these measures were not filed as state regulations). The Court in Asheville, moreover, rejected the argument that the tobacco board of trade was an "administrative agency of the State of North Carolina." Id. at 508 (restating an unsuccessful argument by the board of trade); cf. Panel Op. at *5 (implying that the argument succeeded).

14

In the end, the State Board's conduct cannot be governmental under the substance of the Sherman Act, but private under the state-action doctrine. This contradiction in the panel opinion is a further reason for a rehearing.

<u>CONCLUSION</u>

The State Board respectfully requests that the Court grant rehearing en banc or panel rehearing.

Respectfully submitted, this 15th day of July, 2013.

Noel L. Allen
M. Jackson Nichols
ALLEN, PINNIX & NICHOLS, P.A.
P.O. Box 1270
Raleigh, NC  27602
(919) 755-0505; fax (919) 829-8098
nla@allen-pinnix.com
mjn@allen-pinnix.com

/s/  Matthew W. Sawchak
Matthew W. Sawchak
Stephen D. Feldman
Dixie T. Wells
ELLIS & WINTERS LLP
P.O. Box 33550, Raleigh, NC  27636
(919) 865-7000; fax (919) 865-7010
matt.sawchak@elliswinters.com
stephen.feldman@elliswinters.com
dixie.wells@elliswinters.com

<u>CERTIFICATE OF SERVICE</u>

I certify that on this 15th day of July, 2013, I filed the foregoing petition

with the Clerk of Court using the CM/ECF System, which will send notice to all

counsel of record who are registered CM/ECF users.  In addition, I further certify

that I have served the petition on the following non-CM/ECF users by first-class

mail:

Leonard Arthur Nelson, Esq.
American Medical Association
515 North State Street
Chicago, IL 60610

Richard M. Brunell, Esq.
American Antitrust Institute
2919 Ellicott Street, NW
Washington, DC 20008

Willard K. Tom, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

K. Craig Wildfang, Esq.
Robins, Kaplan, Miller & Ciresi
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Dale E. Thomas, Esq.
Sidley & Austin, LLP
1 South Dearborn Street
Chicago, IL 60603

Stephen W. Keene, Esq.
North Carolina Medical Society
222 North Person Street
Raleigh, NC 27611

Peter Carstensen, Esq.
University of Wisconsin Law School
975 Bascom Mall
Madison, WI 53706

This 15th day of July, 2013.

/s/ Matthew W. Sawchak
Matthew W. Sawchak

16